DAVID R. VOLIN & another[1] *vs.* BOARD OF PUBLIC
ACCOUNTANCY.

Berkshire. November 8, 1995. - February 26, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Board of Public Accountancy. Accountant. Advertising. Statute,* Construction. *Constitutional Law,* Freedom of speech and press.

In an action for declaratory relief challenging the authority of the Board of Public Accountancy, a Superior Court judge correctly ruled that G. L. c. 112, § 87D (*h*), by its terms, permits an unlicensed accountant to use, in advertising and business correspondence, the terms "accountant," "auditor," or "accounting," standing alone. [179-180]

In an action for declaratory relief challenging the authority of the Board of Public Accountancy, a Superior Court judge correctly ruled that an unlicensed accountant could not advertise his membership in the National Society of Public Accountants (NSPA) as that is prohibited by G. L. c. 112, § 87D (*h*), unless the accountant is licensed [180]; further, that certain other language in the unlicensed accountant's advertisements implying special competence as an accountant was proscribed by G. L. c. 112, § 87D (*i*) [180-181]; and finally, that a transmittal letter attached to financial statements prepared by the unlicensed accountant constituted a report prohibited by G. L. c. 112, § 87D (*a*), and contained language proscribed by G. L. c. 112, § 87D (*b*) [181-182].

General Laws c. 112, § 87D, which restricts certain advertising practices and professional activities of unlicensed accountants, does not violate free speech rights as guaranteed by art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution, or the First Amendment to the Constitution of the United States, where the statute regulates commercial speech, advances a substantial government interest by guarding against the public's confusion of licensed and unlicensed accountants, and is no more restrictive than necessary to serve that interest. [182-184]

CIVIL ACTION commenced in the Superior Court Department on July 9, 1991.

The case was heard by *Francis X. Spina,* J., on motions for summary judgment.

---

[1]Massachusetts Society of Independent Accountants, Inc.

The Supreme Judicial Court granted an application for direct appellate review.

*John F. Rogers* (*Kevin M. Kinne* with him) for the plaintiffs.

*Thomas O. Bean,* Assistant Attorney General, for the defendant.

The following submitted briefs for amici curiae:

*Donald B. Verrilli, Jr., & Bruce V. Spiva,* of the District of Columbia, for American Express Tax and Business Services, Inc.

*Daniel L. Goldberg & Daniel Scott Savrin* for the Massachusetts Society of Certified Public Accountants, Inc.

*Gerald J. Thain,* of Wisconsin, *& Leslie S. Shapiro,* of Virginia, for the National Society of Public Accountants.

*Richard I. Miller,* of New York, for the American Institute of Certified Public Accountants.

*Stephen Ostrach* for the New England Legal Foundation.

ABRAMS, J. The plaintiffs, David R. Volin and the Massachusetts Society of Independent Accountants, Inc. (MSIA), brought an action for declaratory relief challenging the authority of the defendant Board of Public Accountancy (board), under G. L. c. 112, § 87D (1994 ed.), the First Amendment to the United States Constitution, and art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution, to restrict certain advertising practices and professional activities of unlicensed accountants. On cross motions for summary judgment, Mass. R. Civ. P. 56 (a) and (b), 365 Mass. 824 (1974), the Superior Court judge granted each motion in part, and issued the following declaratory judgment: "Volin and members of the [MSIA] who are not licensed under the provisions of [G. L. c. 112, § 87B or 87B$^1$/$_2$,] may hold themselves out publicly as accountants and as providing accounting services. They may not use any advertising, letterhead, or work product which contains their affiliation with the National Society of Public Accountants or its initials NSPA. They may not describe their accounting services or modify or enhance their title as accountants with the words 'professional,' 'independent,' 'experienced,' or 'quality'. They may not advertise aspirations to provide 'the very best' accounting services, or their ability to address 'all' financial/accounting needs. They may, as accountants, issue financial

statements. They may not use language in financial statements or letters transmitting financial statements to the effect that they were prepared 'independently' or from 'information provided by management [or the client]' if submitting such financial statements as an accountant."

The plaintiffs and the board both appealed. We allowed the plaintiffs' application for direct appellate review. We affirm.

1. *Facts.* Volin compiles financial statements and provides other business and accounting services. He is not licensed by the Commonwealth or any other jurisdiction as a public accountant or certified public accountant. On his business letterhead and in his advertising materials he refers to himself as an "accountant," to his firm as "experienced accountants," and to his membership in the National Society of Public Accountants (NSPA) and other organizations. His advertising further asserts that he is a "professional" who provides "quality accounting" services, that he aspires to provide "the very best accounting . . . services available," and that he is "one professional for all your financial needs."

Volin attaches to financial statements which he has prepared a transmittal letter on his business letterhead which states: "The accompanying financial statements and management reports of (name of client) for the quarter (year, etc.) ended (date) have been prepared independently by us for your use in accordance with our engagement agreement.

"We have prepared and assembled the financial statements and management reports from information provided to us by management."

Volin's name followed by the letters "NSPA" appears at the bottom of every page of the financial statements which he has prepared.

In early 1991, the board advised Volin that his advertisements and cover letters violated G. L. c. 112, § 87D (1994 ed.). The board requested that Volin enter into a consent agreement which would prohibit him from engaging in such practices in exchange for the board's promise to not initiate criminal prosecution.[2] Volin declined to execute the consent agreement, and commenced this action for declaratory relief.

[2]The board is charged by statute with adopting and enforcing "rules of professional conduct directed to controlling the quality and probity of the practice of public accountancy by license holders, and dealing among other things with independence, integrity and objectivity; competence and techni-

The plaintiff MSIA is a corporation whose purpose is to promote and to protect the interests of its 151 members, approximately 83 per cent of whom practice accountancy but are not licensed to do so. Some or all the unlicensed members of the MSIA engage in business activities similar to those engaged in by Volin and advertise their services and hold themselves out in a similar manner. All the parties agreed that the court should declare the rights of MSIA members based on Volin's accounting practices.

After commencement of this case, the board retained the services of The Becker Institute, Inc. (Becker), to conduct a survey of Massachusetts residents to determine whether the public believed that persons holding themselves out as "accountants," or as offering "accounting services," are required to be licensed by the Commonwealth. Becker surveyed 503 randomly selected Massachusetts adults over the age of eighteen years.[3] The results of the poll indicated that fifty-eight per cent of those surveyed believed that persons who advertise as "accountants" were required to be licensed, while twenty-eight per cent did not believe that a license was required. The poll also indicated that fifty-nine per cent of those surveyed believed that a license was

cal standards; responsibilities to the public; and responsibilities to clients." G. L. c. 112, § 87A$^1$/$_2$ (4) (1994 ed.). The board is authorized to specify the requirements for the licensure of accountants and to commence legal action against any unlicensed person who violates the provisions of G. L. c. 112, § 87D (1994 ed.). G. L. c. 112, §§ 87A$^1$/$_2$, 87D$^1$/$_2$ (1994 ed.).

[3]The Becker Institute, Inc. (Becker), claims that "[t]he sampling variance for this sample of 503 interviews, that is, the possible error due to sampling, is plus or minus 3-4 percentage points. This means that the chances are approximately 95 in 100 that using the same survey procedures, the results in this study do not vary by more than a maximum of 4 percentage points, plus or minus, from the result that would be obtained from a complete coverage of the survey universe. . . . The findings of this survey can be considered to be projectable to the total adult population . . . ." Becker concedes, however, that "[t]he results of this survey are subject to the practical difficulties of, and errors inherent in, conducting any opinion poll."

Those surveyed were not asked to read the provisions of G. L. c. 112, §§ 87A-87E (1994 ed.), before being polled, were not screened for prior knowledge of accounting or prior involvement with accountants, and were not asked if they would do any research before hiring an accountant. The sole criteria were that the person surveyed be at least eighteen years old and be willing to express an opinion.

required to advertise "accounting services," while thirty-one per cent did not.[4]

2. *The board's appeal.* The board appeals from the judge's ruling that the plaintiffs may hold themselves out publicly as accountants and as providing accounting services. The board contends that, regardless of context, use of the terms "accountant" and "accounting services" by unlicensed persons is statutorily prohibited. Relying on data from the Becker Report, the board asserts that the terms "accountant" and "accounting services" misleadingly suggest licensure and are therefore prohibited by G. L. c. 112, § 87D (*h*). That provision bars unlicensed persons from using "the title or designation 'certified accountant', 'chartered accountant', 'enrolled accountant', 'licensed accountant', 'registered accountant', 'accredited accountant', or any other title or designation likely to be confused with the titles 'certified public accountant' or 'public accountant', or use any of the abbreviations 'CA', 'EA', 'LA', 'RA', 'AA', or similar abbreviations likely to be confused with the abbreviations 'CPA' or 'PA.' " G. L. c. 112, § 87D (*h*). The plaintiffs argue that use of the unadorned terms "accountant" and "accounting services" is not expressly forbidden, and that the board's interpretation is incorrect because it renders many of the statute's provisions superfluous. We agree.

"The words of a statute must be construed in association with the general statutory plan." *Commissioner of Revenue* v. *Wells Yachts South, Inc.*, 406 Mass. 661, 664 (1990). We do not "interpret a statute so as to render it or any portion of it meaningless." *Adamowicz* v. *Ipswich*, 395 Mass. 757, 760 (1985). In G. L. c. 112, §§ 87D (*d*)-(*i*), the Legislature carefully restricted the professional titles, designations, and abbreviations used by unlicensed accountants. The board's claim that unlicensed persons may not use the terms "accountant" or "accounting services" would reduce some of those provisions to mere surplusage. The general term "accountant" encompasses terms explicitly prohibited ("certified accountant,

---

[4]When asked whether the State requires licensed accountants to satisfy certain professional standards, over ninety per cent of those surveyed said that to be licensed a person would be required to comply with State regulations and a code of ethics and professional conduct and pass a test administered by the State. Over seventy per cent said that a licensed person would be required to attend a certain number of hours of continuing education in accounting every two years as a condition to being licensed.

"chartered accountant," "enrolled accountant"). The general term "accounting" is similarly prohibited only "in connection with . . . language . . . which implies that such person . . . holds . . . a license or has special competence as an accountant." G. L. c. 112, § 87D (*i*). The plaintiffs are correct that the board may not prohibit them from all use of the terms "account" and "accounting." The Legislature would have prohibited those terms without qualification if it intended to prohibit all use.

This is not to say that the list of prohibited titles and usages contained in § 87D is exclusive. On the contrary, § 87D (*h*) prohibits use of any term "likely to be confused with the titles 'certified public accountant' or 'public accountant' [or] with the abbreviations 'CPA' or 'PA.' " By its terms, however, the statute permits an unlicensed accountant to use the terms "accountant," "auditor," or "accounting," standing alone.

3. *The plaintiffs' appeal.* The plaintiffs appeal from the judge's ruling that Volin may not in his advertisements and business correspondence use the term "NSPA" or mention his membership in that organization, or use the terms "accountant" or "accounting" in conjunction with other specified language. The plaintiffs also appeal from the judge's ruling that Volin's transmittal letters were "reports" within the meaning of G. L. c. 112, §§ 87A and 87D. Finally, the plaintiffs appeal from the judge's ruling that § 87D is constitutional. We conclude that the judge's rulings were correct.

Volin's advertisement of his membership in the National Society of Public Accountants and his use of the acronym NSPA are obvious violations of G. L. c. 112, § 87D (*f*), which proscribes use of the "title or designation, 'public accountant', or the abbreviation 'PA', or any other title, designation, words, letters, abbreviation, sign, card, or device tending to indicate that such person is a public accountant unless he holds a valid license."

Other language in Volin's advertisements violates G. L. c. 112, § 87D (*i*), which forbids an unlicensed accountant from "assum[ing] or us[ing] any title or designation that includes the words 'accountant', 'auditor', or 'accounting', in connection with any other language . . . which implies that such person or firm holds such a license or has special competence as an accountant or auditor."

Specifically, Volin's advertisements describe him as an "experienced" accountant who aspires "to provide . . . the very best accounting . . . services available," as "one professional for all your financial needs," as a provider of "quality accounting . . . services," and as a registered representative of H.D. Vest, a national organization of accountants and tax professionals. These terms and statements clearly imply Volin's "special competence as an accountant" and therefore violate G. L. c. 112, § 87D (*i*).

General Laws c. 112, § 87D (*a*) (1994 ed.), prohibits unlicensed persons from issuing "a report on financial statements of any other person, firm, organization or governmental unit." Section 87D (*b*) provides that the prohibition of § 87D (*a*) is applicable to a "report using any form of language conventionally used by licensees with respect to a review of financial statements." A "report" in this context is defined as "an opinion, report or other form of language which states or implies assurance as to the reliability of any financial statements and which also includes or is accompanied by any statement or implication that the person or firm issuing it has special knowledge or competence in accounting or auditing. Such a statement or implication of special knowledge or competency may arise from use by the issuer of the report of names or titles indicating that he or it is an accountant or auditor, or from the language of the report itself. The term 'report' includes any form of language which . . . is conventionally understood to imply a positive assurance as to the reliability of the financial statements referred to or special competence on the part of the person or firm issuing such language." G. L. c. 112, § 87A.

It is not contested that Volin prepares financial statements for others. The law does not prohibit him from providing that service. However, Volin transmits with those financial statements a cover letter which states that they were prepared "independently," "from information provided to us by management," on letterhead which gives Volin the title of "accountant."

The letter's statement that the accompanying financial statements were prepared "independently" is an implicit assurance of reliability. The inference that they were prepared by an independent accountant implies special knowledge or competence of the issuer. Further, language of "indepen-

dence" is conventionally used by licensees in an audit report, see 1 AICPA[5] Professional Standards AU § 508.08 (1995), and language disclaiming information contained in financial statements as the representations of management is conventionally used by licensees in a review of financial statements. 2 AICPA Professional Standards AR § 100.35 (1995). Therefore, in his transmittal letters, Volin violated G. L. c. 112, § 87D (*a*), by issuing a report, and G. L. c. 112, § 87D (*b*), by using language therein "conventionally used by licensees with respect to a review of financial statements."[6]

4. *Free speech.*[7] The plaintiffs argue that G. L. c. 112, § 87D, thus interpreted, unconstitutionally infringes on their free speech rights as guaranteed by art. 16 and the First Amendment.[8] We do not agree.

Volin's use of terms prohibited by § 87D relates solely to his economic interests, and so qualifies for only the limited protection afforded commercial speech. See, e.g., *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). In circumstances involving potential

---

[5]American Institute of Certified Public Accountants. According to AICPA, which filed a brief as amicus curiae, "a CPA's independence is the foundation of its critical societal role," because it allows the CPA to "provid[e] assurance as to financial statements with total objectivity, free from any interest or bias . . . as well as the appearance of any interest or bias."

[6]Over two and one-half years after this action was commenced the plaintiffs filed a motion further to amend the pleadings, which sought a declaration that certain form letters (submitted to the judge) did not constitute "reports" within the meaning of G. L. c. 112, § 87D, and a declaration regarding separate disputes between the board and other unlicensed accountants. In his summary judgment decision the judge did not address the motion further to amend, thus implicitly denying it. Absent legal error (which has not been shown) we do not disturb a ruling which is within the judge's discretion. Mass. R. Civ. P. 15 (d), 365 Mass. 761 (1974). See *Sarnafil, Inc.* v. *Peerless Ins. Co.*, 418 Mass. 295, 307 (1994); *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264 (1991); *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288, 289-290 (1977), quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (reasons justifying denial of motion to amend include undue delay, bad faith, undue prejudice to opposing party, and futility of amendment).

[7]Because the constitutionality of a statute was involved, the plaintiffs had an obligation to notify the Attorney General of the action. G. L. c. 231A, § 8 (1994 ed.).

[8]The plaintiffs do not argue that their constitutional rights under art. 16 are broader than their rights under the First Amendment.

deception[9] a State may regulate commercial speech if (1) it is doing so in order to protect a substantial governmental interest, (2) the statute directly advances that interest, and (3) the statute is no more restrictive than necessary to serve that interest. *United States* v. *Edge Broadcasting Co.*, 509 U.S. 418, 424 (1993), quoting *Central Hudson, supra.* As to the third criterion, the Supreme Court has stated that "our commercial speech cases require a fit between the restriction and the government interest that is not necessarily perfect, but reasonable." *Edge Broadcasting Co., supra* at 429. Accord *Edenfield* v. *Fane*, 507 U.S. 761, 767 (1993). We agree with the judge below that, as applied to Volin, G. L. c. 112, § 87D, satisfies the *Central Hudson* criteria.

The Commonwealth has a substantial interest in protecting the public from substandard accounting practices. Accord *Edenfield, supra* at 770 ("We have given consistent recognition to the State's important interests in maintaining standards of ethical conduct in the licensed professions"). This interest is directly advanced through the maintenance of professional and ethical standards among those persons recognized by the public as licensed public accountants. See, e.g., *id.* General Laws c. 112, § 87A$^1$/2, and the regulations promulgated thereunder set out the high standards required by the Commonwealth. Those provisions would be ineffective to protect the public, however, if unlicensed individuals could easily mislead the public into thinking that they were licensed. That possibility is foreclosed by G. L. c. 112, § 87D. We agree with the board that § 87D directly advances the government's interest by guarding against the public's confusion of licensed and unlicensed accountants.

We also conclude that there is a "reasonable fit" between the government's interest and the restrictions of § 87D. See *Edge, supra* at 429. "The public's comparative lack of knowledge, the limited ability of the professions to police themselves, and the absence of any standardization in the 'product' renders advertising for professional services especially susceptible to abuses . . . ." *In re R.M.J.*, 455 U.S. 191, 202

---

[9]We agree with the judge that the board is entitled to summary judgment on the ground that Volin's statements were potentially misleading. We therefore need not decide whether they were inherently misleading. Cf. *In re R.M.J.*, 455 U.S. 191, 203 (1982) (distinguishing "inherently" from "potentially" misleading advertisements).

(1982). Section 87D merely prevents public confusion regarding who has and has not fulfilled the requirements of licensure. It does not prevent unlicensed accountants from performing those services which the law permits; nor does it prevent them from advertising themselves as "accountants" who provide "accounting services."[10] Cf. *Moore* v. *California State Bd. of Accountancy,* 2 Cal. 4th 999, 1021-1023 (1992), cert. denied, 507 U.S. 951 (1993) (holding unconstitutional a complete ban on unlicensed use of the terms "accountant" and "accounting"); *Comprehensive Accounting Serv. Co.* v. *Maryland State Bd. of Pub. Accountancy,* 284 Md. 474, 489 (1979) (same). It does no more than require that information about accounting services appear in such form as is necessary to prevent it from being deceptive. Cf. *Friedman* v. *Rogers,* 440 U.S. 1, 16 (1979).

The declaratory judgment issued by the Superior Court judge is affirmed.

*So ordered.*

---

[10]No alternative method of protecting the government's interest was pleaded by the plaintiffs in their complaint. The only alternative presented by the plaintiffs in their summary judgment briefs was their conclusory assertion that a "better and far less restrictive remedy to any public misperception . . . is for the board and its licensees to better [educate] the public." In their appellate brief, the plaintiffs repeat that assertion and make the additional conclusory assertion that "the potential for public misperception . . . could be easily overcome by requiring that non-licensees indicate that they are non-CPA or non-PA members of the [NSPA]." We do not consider the latter assertion because it was not raised below. See *Jancey* v. *School Comm. of Everett,* 421 Mass. 482, 500 (1995); *Boston Gas Co.* v. *Somerville,* 420 Mass. 702, 703 n.2 (1995). Moreover, neither assertion rises to the level of adequate appellate argument. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See, e.g., *King* v. *Driscoll,* 418 Mass. 576, 585 n.8 (1994); *Zora* v. *State Ethics Comm'n,* 415 Mass. 640, 642 n.3 (1993); *Rate Setting Comm'n* v. *Faulkner Hosp.,* 411 Mass. 701, 707 (1992).