NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11995

 BANK OF AMERICA, N.A., trustee,[1] vs.  COMMISSIONER OF REVENUE.


        Suffolk.     March 7, 2016. - July 11, 2016.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                     Hines, JJ.


Trust, Taxation.  Taxation, Trust, Income tax.  Fiduciary.
    Domicil.  Words, "Inhabitant."



    Appeal from a decision of the Appellate Tax Board.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Kevin P. Martin (Joshua M. Daniels with him) for the
taxpayer.
    Kirk G. Hanson, Assistant Attorney General, for
Commissioner of Revenue.
    Phoebe A. Papageorgiou, of the District of Columbia, & Brad
S. Papalardo, for Massachusetts Bankers Association & another,
amici curiae, submitted a brief.


    BOTSFORD, J.  In this case, we consider whether Bank of

America, N.A. (bank), in its capacity as a corporate trustee of

several inter vivos trusts, qualifies as an "inhabitant" and

_____

    [1] Of thirty-four trusts.

accordingly is subject to the fiduciary income tax under G. L. c. 62, § 10, even though the bank is not domiciled in Massachusetts.  Considering the bank's appeal from a decision of the Appellate Tax Board (board) in which the board determined that the bank did qualify as an inhabitant, we affirm the board's decision on the record of this case, but on somewhat different grounds.[2]

1.  Background.[3]  The bank is a national banking association authorized to act as a fiduciary.  At all relevant times, the bank's commercial domicil was in North Carolina, with its principal place of business in Charlotte, North Carolina.

This case concerns appeals by the bank from the denials, by the Commissioner of Revenue (commissioner), of applications for abatement of fiduciary income taxes paid by thirty-four inter vivos trusts.  The taxes were paid by the bank in its capacity as trustee or co-trustee of each of the thirty-four trusts;[4] the

---

[2] We acknowledge the amicus brief submitted by the Massachusetts Bankers Association and American Bankers Association in support of the bank.

[3] The background facts are undisputed.  This case was submitted to the Appellate Tax Board (board) on the parties' statement of agreed facts and sixty-four exhibits; in its decision, the board made findings based on the statement of agreed facts.

[4] Effective February 22, 2008, Bank of America, N.A. (bank), and United States Trust Company National Association (U.S. Trust) were merged; the bank was the surviving entity.  Like the bank, U.S. Trust was a national banking association organized

taxes paid related to the tax year ended December 31, 2007 (tax year at issue). In 2011, the bank took the position that these thirty-four and similar inter vivos trusts of which the bank served as trustee or co-trustee did not qualify as "resident inter vivos trusts," as described in 830 Code Mass. Regs. § 62.10.1(1) (b) (2016),[5] and therefore were not subject to fiduciary income tax under G. L. c. 62, § 10 (§ 10). Accordingly, the bank filed with the commissioner 2,987 applications for abatement of the tax and refund of all taxes paid in the tax year at issue; applications for abatement on behalf of the thirty-four trusts involved in the present appeal were included. After six months passed without a decision from the commissioner, the bank withdrew its consent to extend the time for the commissioner to act with regard to these thirty-

---

under Federal law and authorized by the Federal Comptroller of Currency to act as a fiduciary. Its commercial domicil was in New York, with its principal place of business located in New York, New York. During 2007, U.S. Trust was serving as the trustee or co-trustee of eleven of the thirty-four trusts involved in this appeal, but after its merger with the bank in February, 2008, the bank replaced U.S. Trust as trustee and filed all the applications for abatement relating to the tax year ending December 31, 2007 (tax year at issue), that are the focus of this appeal. Hereafter, unless otherwise indicated, the term "the bank" refers to the bank and U.S. Trust, collectively.

[5] Title 830 Code Mass. Regs. § 62.10.1 (2016) defines inter vivos, or "living," trusts and distinguishes "resident inter vivos trusts" from "non-resident inter vivos trusts" for purposes of determining the amount of fiduciary income subject to tax.

four applications for abatement.  As a result, the thirty-four applications were deemed denied pursuant to G. L. c. 58A, § 6.[6]

In November, 2011, the bank filed petitions with the board under G. L. c. 58A, § 7, appealing the denial of the thirty-four abatement applications; the abatements sought totaled $2,287,707.  The parties chose four of the thirty-four trusts (subject trusts) to serve as representative trusts for the purposes of the appeal, and agreed that the same dispositive question of law applied to the remaining thirty trusts.  The board issued its findings of fact and report on June 10, 2015, and concluded that the bank, in its capacity as trustee, was an inhabitant of the Commonwealth within the meaning of G. L. c. 62, §§ 1 (f) and 10 (c), during the tax year at issue and that the subject trusts were resident inter vivos trusts subject to the fiduciary income tax under G. L. c. 62, § 10 (a).  The bank filed a notice of appeal from the board's decision and this court granted the bank's application for direct appellate review.

The agreed-to facts, which are set out in the board's decision, include the following.  The four representative trusts that were the subject of the board's decision are the R.K. Elliot Trust, the Hovey Trust, the Gordon Trust, and the J.M.

---

[6] The remaining applications for abatement were still pending before the Commissioner of Revenue (commissioner) as of the time the board issued its decision.

Elliot Trust.[7] Each of these trusts is an inter vivos trust created by an individual who was an inhabitant of the Commonwealth at the time of the trust's creation, and each trust had become irrevocable prior to the tax year at issue. During that year, none of the subject trusts had any Massachusetts source income that was taxable under G. L. c. 62, § 5A, and no identified beneficiary to whom income was payable from these trusts was an inhabitant of the Commonwealth. However, it is undisputed that income received in relation to each of the subject trusts was "accumulated for unborn or unascertained persons, or persons with uncertain interests" within the meaning of G. L. c. 62, § 10 (a).

Throughout the tax year at issue, the bank sought out and entered into banking and other commercial relationships, including making loans, with residents and with business entities in the Commonwealth; conducted business in no fewer than 200 branch offices located in the Commonwealth that were staffed by Commonwealth residents who were the bank's employees; and qualified as a "financial institution" that was "engaged in

---

[7] During the tax year at issue, the bank was the sole trustee of the R.K. Elliot Trust and co-trustee of the Hovey Trust; U.S. Trust was the sole trustee of the Gordon Trust and co-trustee of the J.M. Elliot Trust.

business within the Commonwealth" within the meaning of G. L. c. 63, §§ 1, 2, 2A.[8],[9]

Specifically with respect to trust activities relating to the subject trusts, the bank performed the following activities in the Commonwealth during the tax year at issue:  operated and staffed offices for the purpose of fulfilling some of the bank's obligations as a trustee of those trusts; maintained relationships with the trusts' beneficiaries, and decided when to make distributions to the beneficiaries pursuant to the trust documents; administered the trusts' assets and retained certain records relating to trust administration; and conducted research on issues relating to the trusts and discussed such issues with the trusts' grantors, beneficiaries, and their representatives. The bank also performed certain trust-related activities in the Commonwealth that related to trust administration more generally, including consulting with clients and prospective clients about the bank's trust services; discussing accounts with grantors and beneficiaries of other trusts for which the

---

[8] General Laws c. 63, §§ 1, 2, and 2A, relate to taxation of banks and other financial institutions engaged in business in the Commonwealth.

[9] The facts stated in this paragraph relate specifically to the bank, but the parties agree that during the tax year at issue, U.S. Trust conducted banking business in the Commonwealth and, like the bank, qualified as a "financial institution" that was "engaged in business within the Commonwealth" within the meaning of G. L. c. 63, §§ 1, 2, 2A.

bank served as trustee; reviewing proposed trust instruments with clients; and providing a place for persons to execute trusts that named the bank as fiduciary.  However, bank personnel located outside the Commonwealth also performed trust-related activities in relation to the subject trusts, and "policy and procedures related to administrative and investment components of trusts generally were formulated by [bank] personnel located outside the Commonwealth."[10]

2.  Discussion.  a.  Standard of review.  "A decision by the board will not be modified or reversed if the decision 'is based on both substantial evidence and a correct application of the law.'"  Capital One Bank v. Commissioner of Revenue, 453 Mass. 1, 8, cert. denied, 557 U.S. 919 (2009), quoting Boston Professional Hockey Ass'n v. Commissioner of Revenue, 443 Mass. 276, 285 (2005).  "Because the board is authorized to interpret and administer the tax statutes, its decisions are entitled to deference. . . .  Ultimately, however, the interpretation of a statute is a matter for the courts" (citation omitted).  Onex Communications Corp. v. Commissioner of Revenue, 457 Mass. 419, 424 (2010).

---

[10] The facts stated in this paragraph apply specifically to the bank, but the parties have agreed that U.S. Trust engaged in similar trust-related activities in the Commonwealth during the tax year at issue.

b.  Relevant statutes.  General Laws c. 62 generally concerns the taxation of income within the Commonwealth. Section 10, which relates to trust income, provides in relevant part:

> "The income received by trustees or other fiduciaries shall be taxed in the following manner:
>
> "(a) The income received by trustees or other fiduciaries described in subsection (c) of this section shall be subject to the taxes imposed by this chapter to the extent that the persons to whom the same is payable, or for whose benefit it is accumulated, are inhabitants of the commonwealth . . . .  Income received by trustees or other fiduciaries described in subsection (c) of this section which is accumulated for unborn or unascertained persons, or persons with uncertain interests shall be taxed as if accumulated for the benefit of a known inhabitant of the commonwealth.
>
> ". . .
>
> "(c) The provisions of subsection[] (a) . . . of this section shall apply to . . . trustees under a trust created by a person or persons, any one of whom was an inhabitant of the commonwealth at the time of the creation of the trust or at any time during the year for which the income is computed, or who died an inhabitant of the commonwealth, any one of which trustees or other fiduciaries is an inhabitant of the commonwealth . . . ."

As these provisions indicate, the fiduciary income tax described in § 10 only applies to trust income when the residency or inhabitance requirements for three distinct parties connected to the trust are met.  In particular, for the fiduciary income tax prescribed by § 10 (a) to be imposed, at least one grantor or creator of the trust, at least one or more of the beneficiaries,

and at least one trustee must be "inhabitants" of the Commonwealth.

Section 1 of G. L. c. 62 contains definitions applicable to the chapter, including the term "inhabitant."  It provides in relevant part:

> "When used in this chapter the following words or terms shall, unless the context indicates otherwise, have the following meanings: --
>
> ". . .
>
> "(f) 'Resident' or 'inhabitant', (1) any natural person domiciled in the commonwealth, or (2) any natural person who is not domiciled in the commonwealth but who maintains a permanent place of abode in the commonwealth and spends in the aggregate more than [183] days of the taxable year in the commonwealth, including days spent partially in and partially out of the commonwealth. . . . The word 'non-resident' shall mean any natural person who is not a resident or inhabitant."

G. L. c. 62, § 1 (f) (§ 1 [f]).

By its terms, the definition of "inhabitant" in § 1 (f) refers solely to a "natural person," a term that does not include a corporation, such as the bank.  This leads to the third relevant statute, G. L. c. 62, § 14 (§ 14), which states in pertinent part:

> "Corporations acting as trustee or in any other fiduciary capacity shall, with respect to the income received by them in that capacity, be subject to this chapter in the same manner and under the same conditions as individual inhabitants of the commonwealth acting in similar capacities . . . ."

c.  Board's decision.  Before the board, the bank and the commissioner defined the "sole issue presented" in the bank's

appeal to be whether the bank was an "inhabitant" of the Commonwealth within the meaning of §§ 1 (f), 10, and 14.[11] Recognizing the interplay among these three statutes, the board considered whether, and if so, in what manner, the definition of the term in § 1 (f) should be interpreted to include a corporation. It first determined that in light of § 14's explicit directive that corporate trustees be treated the same as individual trustees in relation to fiduciary income tax, the definition of "inhabitant" in § 1 (f) should be read to apply to corporate trustees, and, turning to the terms of the definition, the board focused specifically on the terms of § 1 (f) (2).[12] Under § 1 (f) (2), a natural person who is a nondomiciliary qualifies as an inhabitant if he or she "maintains a permanent place of abode in the Commonwealth" and spends more than 183 days per year in the Commonwealth. To apply this definition to

_____

[11] The bank and the commissioner agreed that the subject trusts were created by individuals who were "inhabitants" of the Commonwealth at the time each created the trust, see G. L. c. 62, § 10 (c); the parties also agreed that income received by the trustees of each of these trusts during the tax year at issue was "accumulated for unborn or unascertained persons or persons with uncertain interests," and therefore was taxable "as if accumulated for the benefit of a known inhabitant," see § 10 (a). Accordingly, whether the bank was required to pay fiduciary income tax pursuant to G. L. c. 62, § 10, on behalf of the trusts in question turns on whether the bank itself qualifies as an "inhabitant."

[12] The board recognized that G. L. c. 62, § 1 (f) (1), with its requirement of domicil in the Commonwealth, could not be applied to the bank, given the bank's commercial domicil in North Carolina (and New York, for U.S. Trust).

a corporation, the board considered the meaning of "permanent place of abode," a phrase not statutorily defined.  Based on dictionary definitions, the board ultimately determined that "a corporation will qualify as an inhabitant of the Commonwealth within the meaning of §§ 1 (f) and 10 (c) if it maintains a permanent place in the Commonwealth at which it abides, i.e., where it continues to be and is stable in some state or constant in some relationship for the requisite number of days of a taxable year."[13]  The board then applied this rule to the underlying facts, and concluded that the bank satisfied the criteria to be an "inhabitant" during the tax year at issue through its presence and activities in Massachusetts during that year.

     d.  Bank's claims of error.  i.  "Inhabitant" requirement as applied to a corporate trustee.  The bank argues that because the definition of "inhabitant" under § 1 (f) is specific only to "natural person[s]," it manifestly does not include corporate trustees, and that the traditional criterion for imposing the fiduciary income tax on corporations -- that the corporation was domiciled in the Commonwealth -- has not been met because the

---

[13] Before turning to dictionary definitions, the board looked to a definition of "permanent place of abode" provided in the commissioner's Technical Information Release 95-7 (Jan. 10, 1996), 2 Official MassTax Guide, at PWS-82 (Thomson Reuters 2016) (release).  The board found the release not to be relevant because it was clear that the release did not attempt to define "permanent place of abode" as it applied to corporations.

bank, and U.S. Trust, had their commercial domicils in States other than Massachusetts; at the very least, the bank contends, § 1 (f) is ambiguous and the taxpayer trusts should receive the benefit of any such ambiguity.  The bank further argues that § 14 does not require the application of § 1 (f) (2) to corporations.  In the bank's view, these reasons, alone or in combination, compel the conclusion that the fiduciary income tax does not apply to the subject trusts because the inhabitance requirement for the trustee under § 10 (c) is not satisfied.  We disagree.

The Legislature amended the definition of "inhabitant" in 1995 to add § 1 (f) (2) specifically to include a class of individuals who are not Massachusetts domiciliaries, namely, individuals domiciled outside the Commonwealth who maintain a "permanent place of abode" and spend more than 183 days in Massachusetts.  See St. 1995, c. 38, § 65.  Under § 14, corporate trustees are to be treated "in the same manner and under the same conditions as individual inhabitants."  Keeping in mind that "[t]he words of a statute must be construed in association with the general statutory plan," Commissioner of Revenue v. Wells Yachts South, Inc., 406 Mass. 661, 664 (1990), the board's interpretation of the definition of "inhabitant" in § 1 (f) (2) as applicable to a corporate trustee was a reasonable one.  See generally Attorney Gen. v. Commissioner of

Ins., 450 Mass. 311, 319 (2008) (substantial deference given to reasonable interpretation of statute by agency charged with administrative enforcement). This is particularly true in view of the specific instruction in G. L. c. 62, § 1, that when used in the chapter, the words defined in § 1 are to have the meanings set forth in that section "unless the context dictates otherwise." In light of § 14's explicit directive to treat individual and corporate trustees the same for purposes of the fiduciary income tax, we agree with the commissioner that the requirement of § 10 (c) -- that at least one trustee of a trust be "an inhabitant of the commonwealth" -- provides a context in which the definition of "inhabitant" cannot be limited to a "natural person," but rather must be expanded to include a corporate entity.[14] Cf. Springall v. Commissioner of Revenue,

---

[14] Insofar as the bank asserts that, in light of the orientation of G. L. c. 62, § 1 (f) (2), toward individuals, there is no reason to interpret that portion of G. L. c. 62, § 1 (f) (§ 1 [f]), as applying to corporations, it is significant that when the Legislature amended § 1 (f) in 1995 to add § 1 (f) (2), it did not amend G. L. c. 62, § 14 (§ 14), in any respect. As the commissioner points out, the directive in § 14 that for purposes of the fiduciary income tax, corporate trustees are responsible "in the same manner" as individual inhabitants "acting in similar capacities" has been in effect since 1916. See St. 1916, c. 269, § 9. The Legislature is presumed to have been aware that in broadening the definition of "inhabitant" in 1995 by adding § 1 (f) (2), the expanded definition would also apply to corporate trustees through § 14. See, e.g., Boston Water & Sewer Comm'n v. Metropolitan Dist. Comm'n, 408 Mass. 572, 578 (1990) ("the Legislature is presumed to understand and intend all consequences of its acts" [quotation and citation omitted]).

391 Mass. 23, 25 n.2 (1984) ("Surely, the Legislature did not intend to treat a trust differently for the purposes of G. L. c. 62, § 9, depending on whether a fiduciary was a natural person or a corporation"). To read § 14 as not imposing this requirement on corporations would be essentially to deprive the section of meaning, an undesirable result. See, e.g., Volin v. Board of Pub. Accountancy, 422 Mass. 175, 179 (1996) ("We do not interpret a statute so as to render it or any portion of it meaningless" [quotation and citation omitted]). We therefore reject the bank's argument that, in connection with its activities as a trustee of the subject trusts, it cannot be subject to the fiduciary income tax imposed under § 10 solely because it is not domiciled in Massachusetts.

ii. The bank's presence and activities in the Commonwealth. The bank further argues that, even if § 1 (f) (2) applies to corporations, the board erred by creating and applying a "presence and activities test" to determine whether the bank met the criteria set forth in § 1 (f) (2).[15] In the

---

[15] In ruling that the bank qualified as an inhabitant of the Commonwealth during the tax year at issue, the board pointed to the bank's "numerous and substantial activities" in the Commonwealth during the tax year at issue, referencing the parties' agreed-upon facts about (1) the general commercial activities conducted by the bank in the Commonwealth, (2) the bank's Commonwealth-centered activities relating specifically to the four appellant trusts, and (3) the bank's activities in the Commonwealth relating to trust administration and development of trust administration business more generally. The bank refers

bank's view, the test treats corporate trustees less favorably than individual trustees, in violation of § 14's mandate that they be treated "in the same manner." Specifically, the bank asserts that in relation to individual trustees, the test under § 1 (f) (2) is narrow, requiring such trustees to have a substantial personal nexus to Massachusetts, whereas the same is not required of corporate trustees. Thus, the argument goes, an individual trustee who is not a Massachusetts domiciliary must spend more than half the tax year in the Commonwealth to qualify as an inhabitant, making it unlikely that he or she would be deemed an inhabitant or resident of more than two States; but a corporate trustee, however -- at least under the board's presence and activities test -- could be treated as an inhabitant of the Commonwealth for purposes of the fiduciary income tax under § 10 if the trustee maintains a single office in Massachusetts for more than one-half year, regardless of whether the corporation conducts any trust administration activities here. The bank suggests a more narrow test for a corporate trustee, such as one that turns on whether there is a predominant corporate presence in Massachusetts, which might be measured by the location of employees, or the location of assets, or the source of corporate revenue. In the alternative,

---

to the board's reference to all these activities as the board's "presence and activities test."

the bank argues that we should adopt the type of test that the bank suggests the commissioner previously suggested to the board: that corporate trustee inhabitance and, in turn, fiduciary income tax liability should be focused on whether the trustee's administration of the particular trusts at issue takes place within Massachusetts. The bank suggests that, under such a standard, it is unclear whether the bank would be subject to the fiduciary income tax in relation to the subject trusts because, as the board found, some of the bank's trust administration activities were conducted outside the Commonwealth.

We do not share the bank's view that for the purpose of assessing the inhabitance of a corporate trustee, the board has created a formal "presence and activities" test that focuses on the corporation's general business presence in the Commonwealth. Rather, we understand the board to have evaluated the specific, agreed-upon facts presented and to have reached its conclusion that the bank qualified as an inhabitant of the Commonwealth based on those facts -- facts that included that, in terms of Massachusetts-based activities, the bank both conducted general banking transactions, maintaining over 200 branch offices staffed by bank employees, and performed work as a corporate trustee of the particular trusts at issue here. With respect to the latter, the board found that the bank:

"operated and staffed offices to fulfill some of their obligations as trustees of the [subject] Trusts; maintained relationships with the beneficiaries of the [subject] Trusts and . . . decided when to make distributions of trust assets to beneficiaries; administered the assets of the [subject] Trusts; consulted with clients and prospective clients [of other trusts] about [the bank's] trust services; . . . provided places for execution of [other] trusts which named [the bank or U.S. Trust] as fiduciary; and researched and discussed issues involving the [subject] Trusts and discussed such issues with grantors, beneficiaries and/or their representatives."

The bank points to the language of § 14 providing that a corporate trustee will "be subject to [the fiduciary income tax provisions of G. L. c. 62] in the same manner and under the same conditions as individual inhabitants of the commonwealth acting in similar capacities" (emphasis added).  We agree with the bank that the quoted language from § 14 requires a focus on the actions within the Commonwealth of a corporation acting as a corporate trustee, including specifically acting as trustee of the trust or trusts potentially subject to fiduciary income tax liability, and not just on the corporation's general business activities.  Put more generally, we interpret the three interrelated statutes that apply in this case, §§ 1 (f) (2), 10, and 14, to mean that a corporate trustee will qualify as an "inhabitant" of the Commonwealth within the meaning and for the purposes of these statutes if it:  (1) maintains an established place of business in the Commonwealth at which it abides, i.e., where it conducts its business in the aggregate for more than

183 days of a taxable year; and (2) conducts trust administration activities within the Commonwealth that include, in particular, material trust activities relating specifically to the trust or trusts whose tax liability is at issue.

We conclude that the board's decision in the present case is consistent with this interpretation of statutory requirements. It concluded in effect that for a corporate trustee such as the bank to be deemed an inhabitant under § 1 (f) (2), there must be proof that the corporation has an established presence in the Commonwealth through, e.g., maintaining a permanent office or offices in Massachusetts and engaging in regular business activities here, for more than one-half of the tax year at issue. Such a presence corresponds to the presence of an individual inhabitant at a permanent place of abode for more than 183 days in a year. Certainly the agreed-upon facts establish that the bank met this requirement. But as the portion of the board's decision quoted supra shows, the board did not stop with the bank's general corporate activities within the Commonwealth. Rather, the board considered the Commonwealth-centered activities conducted by the bank in its capacity as corporate trustee, including activities that were centered on the subject trusts. And we agree with the board that the bank's activities relating to administration of the subject trusts demonstrate the bank's material and specific

trust-related nexus to Massachusetts for more than 183 days of the tax year at issue. Accordingly, the board did not err in ruling that the bank was subject to the fiduciary income tax imposed by § 10.[16]

iii. Dormant commerce clause. Finally, the bank argues that the board's decision, and in particular its interpretation of § 1 (f) (2) as applying to the bank, "raises serious questions" under the dormant commerce clause of the United States Constitution. See art. I, § 8, cl. 3, of the United States Constitution.[17] The bank did not raise a constitutional claim before the board, and to the extent it seeks to do so here, we consider the claim to be waived.[18] See G. L. c. 58A,

---

[16] The bank argues further that the board's presence and activities test violates fundamental principles applicable to the interpretation of Massachusetts statutes, including that the test puts a premium on corporate structure, discourages companies from establishing or acquiring offices in Massachusetts, and places an unreasonable administrative burden on national banks. There is no evidence in the record to support these assertions.

[17] The bank states specifically in its reply brief that it "does not claim that [§ 1 (f) (2)] violates the [d]ormant [c]ommerce [c]lause either facially or as applied here." Rather, it makes the argument to persuade us "to adopt a reading of [§ 1 (f) (2)] that avoids constitutional doubts across the sweep of [the section's] reasonably foreseeable applications."

[18] The bank did not raise any argument under the dormant commerce clause before the board and the board made no rulings with regard to the dormant commerce clause as applied to the facts on record before it. Indeed, the bank specifically stated in its reply brief to the board that it "did not argue the specter of multistate taxation as a basis for relief" and that

§ 13 ("The court shall not consider any issue of law which does not appear to have been raised in the proceedings before the board"). See also Minchin v. Commissioner of Revenue, 393 Mass. 1004, 1005 (1984),quoting New Bedford Gas & Edison Light Co. v. Assessors of Dartmouth, 368 Mass. 745, 752 (1975) ("To raise a constitutional question on appeal to this court from the board, the taxpayer must present the question to the board and, in so doing, make a proper record for appeal. Otherwise, the taxpayer waives the right to press the constitutional argument").[19]

3. Conclusion. The decision of the Appellate Tax Board is affirmed.

So ordered.

---

"there is no constitutional issue raised in this matter." The bank's argument below -- that, if other States were to follow Massachusetts's lead in taxing fiduciary income on the basis of a corporation's residence in those States, it could lead to "potential constitutional implications" -- was insufficient to raise a particularized claim of error warranting review by this court under the dormant commerce clause.

[19] Although this case does not require us to consider a dormant commerce clause challenge to § 1 (f) (2) or the related statutory provisions governing the fiduciary income tax, it bears pointing out that (1) under G. L. c. 62, § 6 (a), an inter vivos trust subject to the fiduciary income tax in Massachusetts would be entitled to a credit for any taxes paid with respect to that income to another State; and (2) for such a trust to be subject to the fiduciary income tax here, not only must the corporate trustee be an inhabitant of the Commonwealth, but so must the creator of the trust as well as at least one beneficiary. See G. L. c. 62, § 10 (a), (c).